## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RCS CAPITAL CORPORATION, *et al.*,<br><br>                                                Debtors.[1] | Chapter 11<br><br>Case No. 16-10223 (MFW)<br><br>(Jointly Administered) |
| RCS Creditor Trust,<br>                                                Plaintiff,<br><br>vs.<br><br>American Realty Capital Hospitality Trust, Inc.<br>dba American Realty Universal,<br>                                                Defendant. | Adv. No. **Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

The RCS Creditor Trust (the "Plaintiff" or "Creditor Trust"), by and through the Creditor Trust Administrator, and through the undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against American Realty Capital Hospitality Trust, Inc. dba American Realty Universal (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

### NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of

---

[1] The "RCS Debtors" in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: RCS Capital Corporation (4716); American National Stock Transfer, LLC (3206); Braves Acquisition, LLC (6437); DirectVest, LLC (9461); J.P. Turner & Company Capital Management, LLC (7535); RCS Advisory Services, LLC (4319); RCS Capital Holdings, LLC (9238); Realty Capital Securities, LLC (0821); SBSI Insurance Agency of Texas Inc. (9203); SK Research LLC (4613); Trupoly, LLC (5836); and We R Crowdfunding, LLC (9785). The RCS Debtors' corporate headquarters and mailing address is located at 245 Parle Avenue, 39th Floor, New York, NY 10167.

RCS Capital Corporation and its affiliated debtors and debtors in possession (collectively, the "RCS Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2.     In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the RCS Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Creditor Trust and the RCS Debtors or the reorganized RCS Debtors, as applicable, to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.     This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re RCS Capital Corporation, et al.,* Case No. 16-10223 (MFW), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.     The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.     This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters

---

[2] There are additional debtors in this jointly administered case which have a different petition date and are subject to a different plan (the "Cetera Debtors"). This complaint relates solely to the specific RCS Debtors listed in footnote 1.

contained herein.

6.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7.     Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.     On January 31, 2016 (the "Petition Date"), each of the RCS Debtors commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. Subsequently, on March 26, 2016, the Cetera Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.

9.     On February 2, 2016, the Court entered an order authorizing the joint administration of the RCS Debtors' chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [D.I. 56].[3] The Cetera cases were added to this joint administration on March 29, 2016. [D.I. 415].

10.    On May 19, 2016, the Court entered an order confirming the *Fourth Amended Joint Plan of Reorganization For RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order" and "Plan," respectively). [Confirmation Order, D.I. 769; Plan, D.I. 769-1].

11.    The effective date of the Plan (the "Effective Date") occurred on May 23, 2016. [D.I. 782]. In accordance with the Plan and Confirmation Order, the Creditor Trust was established effective on the Effective Date of the Plan, and the RCS Debtors, the Delaware

---

[3] All docket items referenced are from Case No. 16-10223, under which the RCS Debtors' bankruptcy cases are jointly administered.

Trustee, and the Creditor Trustees entered into that certain Creditor Trust Agreement. [*See* D.I. 703-13 and 735-1].

12.    Pursuant to Section 4.5 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

## THE PARTIES

13.    Pursuant to Section 5.17 of the Plan, on the Effective Date, the Creditor Trust Assets and Litigation Assets,[4] including Avoidance Actions under Sections 544-550 and 553 of the Bankruptcy Code, were transferred to the Creditor Trust. [D.I. 769-1]. Additionally, pursuant to the Plan and Confirmation Order, the Creditor Trust Administrator was appointed as Administrator of the Trust. The Creditor Trust was authorized, upon the direction of the Creditor Trust Board of the RCS Creditor Trust and through the Creditor Trust Administrator, and has standing, among other things, to maintain, prosecute, settle, dismiss, abandon, or otherwise dispose of actions under chapter 5 of the Bankruptcy Code, including this avoidance action.

14.    Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that acquired and owned hotels to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 405 Park Avenue, New York, New York 10022. Plaintiff is informed and believes and on that basis alleges that Defendant is a business entity, form unknown, residing in and subject to the laws of the State of New York.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Confirmation Order, and the Creditor Trust Agreement.

## FACTUAL BACKGROUND

15.     As more fully discussed in the *Declaration of David Orlofsky Chief Restructuring Officer of RCS Capital Corporation in Support of Chapter 11 Petitions and First Day Motions*[5] and the *Disclosure Statement With Respect to Second Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code,*[6] as of the Petition Date, RCS Capital Corporation ("RCS"), together with the other RCS Debtors and RCS's direct and indirect non-debtor subsidiaries (collectively, the "Company") were providers of integrated financial services, principally to retail investors. The Company historically operated in six principal segments: i) independent retail advice ("Independent Retail Advice"); ii) wholesale distribution; iii) investment banking; iv) capital markets and transaction management services; v) investment research; and vi) corporate and other. However, as of the Petition Date, substantially all of the Company's business operations other than its Independent Retail Advice segment had either been sold or were in the process of winding down. Through this Independent Retail Advice segment, the Company provided retail advice and investment programs offered by third-party program sponsors though a nationwide network of registered financial advisors. RCS was the ultimate parent company to each of the other RCS Debtors, as well as the non-debtor subsidiaries.

16.     Prior to the Petition Date, the RCS Debtors, as providers of integrated financial services to retail investors, maintained business relationships with various business entities, through which the RCS Debtors regularly purchased, sold, received, and/or delivered goods and services.

---

[5] D.I. 17.

[6] D.I. 381-1.

17.     As providers of integrated financial services to retail investors, the RCS Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The RCS Debtors also regularly paid for services used to facilitate their business.

18.     The RCS Debtors' financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things, the acquisition in early 2014 through early 2015 of eleven retail broker-dealer subsidiaries with the intent to establish a presence in the retail advice independent broker-dealer section. The Company incurred approximately $1.1 billion in debt and preferred stock, and used in excess of $150 million in cash on hand to fund and finance this strategy. However, the Company experienced a delay in realizing the expected synergies from these transactions due to the effect of proposed regulations and overall market conditions. Accordingly, the Company did not have the liquidity to make certain investments required to realize these synergies. Additional factors contributing to the Company's decline included: i) industry-wide proposed regulations and rules, ii) the November 12, 2015 filing by the Massachusetts Securities Division of an administrative complaint against Debtor Realty Capital Securities alleging it violated the Massachusetts Uniform Securities Act, and its subsequent shutdown; iii) the January 14, 2016 notice of default received from VEREIT, Inc. under a $15.3 million unsecured note; and iv) the January 5, 2015 delisting by The New York Stock Exchange of the Company's Class A common stock.

19.     As of the Petition Date, the RCS Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the RCS Debtors' business. As of the Petition Date, the Cash Management System

consisted of several bank accounts types, including: operating accounts, payroll accounts, and depository accounts, all of which were maintained at Bank of America, N.A. ("BofA). [See D.I. No. 13]. While the Cash Management System also included bank accounts of certain non-debtor entities, each RCS Debtor with its own operating account received its customer payments through its operating account and made disbursements to its own vendors through this same account (the "Operating Accounts"). These include the following Operating Accounts held at BoA: account ending 4161 held by RCS; account ending 2377 held by RCS Capital Holdings; account ending 0026 held by RCS Advisory Services; account ending 0233 held by American National Stock Transfer; account ending 9809 held by SK Research, LLC; account ending 3336 held by Trupoly, LLC; and account ending 0178 held by Realty Capital Securities. On occasion, the RCS Debtors would also submit payment for invoices from vendors to an automated payment system, AvidXchange ("Avid"). Historically, a list of invoices needed to be paid were sent by RCS Capital Corporation's account group to ARC Group's treasury department, which processed the certain invoices through Avid. Upon information and belief, each RCS Debtor would send a payment for invoices to be paid through Avid from their Operating Account, noting the transaction in their bank statement as an Avid transaction, and listing the payment identification number from which payment would be disbursed to the vendor. An Avid check would then issue for that exact dollar amount and payment identification number listed, with the check noting that the payment was for the applicable RCS Debtor (such Avid account, along with the Operating Accounts, the "Disbursement Accounts").

20.     The RCS Debtors drew upon the Disbursement Accounts to pay for their operational costs, including to pay their vendors, suppliers, distributors, and other creditors, including Defendant.

21.     During the ninety (90) days before the Petition Date, that is between November 2, 2015, and January 31, 2016 (the "Preference Period"), the RCS Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

22.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the RCS Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23.     Defendant conducted business with one or more of the RCS Debtors through and including the Petition Date pursuant to the Agreements.

24.     As identified in the Agreements identified on Exhibit A, one or more of the RCS Debtors purchased goods and/or services from Defendant or otherwise held a debt owed by one or more of the Debtors.

25.     Plaintiff has completed an analysis of all readily available information of the RCS Debtors and is seeking to avoid all of the transfers of an interest of the RCS Debtors' property made by the applicable RCS Debtor(s) to Defendant within the Preference Period.

26.     Plaintiff has determined that one or more of the RCS Debtors made transfer(s) of an interest of the RCS Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $207,170.51 (the "Transfer" or

"Transfers"). The details of each Transfer are set forth on <u>Exhibit A</u> attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

27.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the RCS Debtors of an interest of the RCS Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revisions to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Plan, if applicable (collectively, the "<u>Amendments</u>"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
#### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29.     As more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein, during the Preference Period, the RCS Debtor(s) identified on <u>Exhibit A</u> made Transfers to or for the benefit of Defendant in an aggregate amount not less than $207,170.51.

30.     Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring RCS Debtor(s) as identified on <u>Exhibit A</u>.

31.     Defendant was a creditor at the time of each Transfer by virtue of supplying the RCS Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the RCS Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements, or by virtue of otherwise holding a debt owed by one or more of the RCS Debtors.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1), because each Transfer either reduced or fully satisfied a debt or debts then owed by the RCS Debtor(s) identified on Exhibit A to Defendant.

33.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the RCS Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring RCS Debtor(s) as set forth on Exhibit A hereto.

34.     Each Transfer was made while the RCS Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36.     As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the RCS Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the RCS Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the

Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the RCS Debtors' bankruptcy estates.

37.    In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

38.    Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39.    To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one RCS Debtor without a corresponding transfer into the payment account by the RCS Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A.    The RCS Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.    The RCS Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.    The RCS Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

40.    Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

**COUNT III**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

41.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

42.     Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), and/or any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

43.      Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

44.     Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

**COUNT IV**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

45.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

46.     Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

47.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

48.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

49.    Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

A.  On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b) and/or 548 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.  On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C.  Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated:  January 30, 2018

**ASHBY & GEDDES, P.A.**

By:  /s/ *Benjamin W. Keenan*_____
Benjamin W. Keenan, Esq. (DE No. 4724)
David F. Cook, Esq. (DE No. 6352)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
Tel: (302) 654-1888
Email: bkeenan@ashby-geddes.com

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary Underdahl, Esq., MN SBN 0301693
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: 651-289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for RCS Creditor Trust*